ROSENBERG & ESTIS, P.C.
733 Third Avenue
New York, New York 10017
John D. Giampolo, Esq.
Email: jgiampolo@rosenbergestis.com
Tel: (212) 551-1273

*Proposed Counsel for the Debtor and Debtor In Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| I AFFORD NY, LLC | : | (Subchapter V) |
| | : | |
| Debtor.[1] | : | Case No. 23-43825 |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

# DECLARATION OF EUGENE GOLDSTEIN PURSUANT TO LOCAL RULE 1007-4

**EUGENE GOLDSTEIN**, pursuant to 28 U.S.C. § 1746, declares as follows:

1. I am the Chief Operating Officer for the above-captioned Debtor. As such, I am familiar with the facts contained herein based upon my personal knowledge and/or my review of documents referenced herein.

2. I submit this declaration pursuant to Rule 1007-4 of the Local Rules for the United States Bankruptcy Court for the Eastern District of New York.

3. Debtor is a small startup company formed in recent years for affordable housing marketing, a business which it continues to operate. It's official website is located here https://iaffordny.com/.

4. Prior to filing the above-captioned bankruptcy proceeding on October 20, 2023 (the Petition Date"), the Debtor was named a defendant in the action styled *THE FORTUNE SOCIETY,*

---

[1] Debtor, I Afford NY, LLC, a/k/a, iAfford NY, LLC, with United States federal tax identification number ending in 9867.

*INC. v. IAFFORD NY, LLC*, Case No. 22-cv-06584 United States District Court Eastern District of New York (the "Action"), in which plaintiff, The Fortune Society, Inc. ("Fortune") alleged housing discrimination. The Action was closed on August 16, 2023 after Fortune and its counsel accepted a Rule 68 Offer of Judgment (the "Rule 68 Offer"), which offered to allow Fortune to enter judgment (the "Judgment") against Debtor for: declaratory and injunctive relief, and for $500,000.00 for damages and costs, inclusive of attorneys' fees, through the date the Rule 68 Offer was made.

5. The Rule 68 Offer was made once it became abundantly clear that Fortune and its counsel were over litigating the Action to obtain a hefty fee award after years of protracted litigation and trial. The only quantifiable damages in the Action were legal fees and Fortune's counsel represented that its fees totaled nearly $470,000.00. Despite being warned that even a low six figure judgment might cause Debtor, a newly formed company, to go out of business or declare bankruptcy, Fortune, through its counsel rejected settlement offers.

6. Debtor was placed in an impossible position; it understood that liability could be imposed under the Fair Housing Act for mistaken employee statements, regardless of Debtor's intent or actual business practices, and that liability was comprised, almost entirely, of Fortune's legal fees, which would continue to grow. That is in addition to the substantial unpaid legal fees, in the amount of $432,629.35, alleged and sought against Debtor by its prior counsel in the Action. As such, for the sole purpose of avoiding the expense of added litigation and trial, Debtor exercised its statutory right and made the Rule 68 offer, which if accepted, would fully resolve all allegations in the Action.

7. After the $500,000 Judgment was entered against Debtor, Fortune still refused to resolve it via voluntary reduction or payment plan despite repeated warning that such refusal would

precipitate a bankruptcy filing. Instead, Fortune sought to enforce the Judgment by serving post-judgment discovery subpoenas and restraining notices on Debtor and its bank account since September 15, 2023.

8. This case was not commenced under any other chapter of the Bankruptcy Code.

9. No committee was formed prior to the filing for relief.

10. A list of those creditors holding the twenty (20) largest unsecured claims, excluding claims of any insiders, was filed in this case [Doc 10].

11. There are no creditors holding or alleging secured claims against the Debtor.

12. As set forth in the *Declaration of Eugene Goldstein in Compliance with 11 U.S.C. § 1116(1)(B)* filed with the Debtor's petition in this case [Doc 1], no balance sheet, statement of operations or cash-flow statement has been prepared for the Debtor but true and correct copies of federal tax returns for 2022 for the Debtor were provided to the United States Trustee's Office contemporaneously with the filing of Debtor's petition.

13. The Debtor's assets as of the Petition Date consist of: (i) receivables valued at approximately $75,000.00; (ii) $27,683.00 cash in its business checking account; and (iii) office furniture and computer equipment valued at approximately $20,000.00.

14. There are no shares of the Debtor that are publicly held.

15. There is no property of the Debtor in the custody or possession of any custodian, public officer, mortgagee, pledgee, assignee of rents or secured creditor, or agency for any such entity.

16. The Debtor operates its business from the leased premises located at 670 Myrtle Avenue #134, Brooklyn, New York and 141 Flushing Avenue Apt. 1201A, Brooklyn, New York, which Debtor leases from World of Communications and GBMI 77 LLC, respectively. Debtor's

books and records are located at its location and at the location of its accountant, Kaufman Fisch at 105 Schunnemunk Rd #111, Monroe, NY 10950.

17. In addition to the above-referenced Action, Debtor is a defendant and/or respondent in (I) a complaint pending before the New York State Division of Human Rights, styled as *Earl Monroe v. One Boerum Development Partners LLC, iAffordNY, I AFFORD NY, LLC, Brittany Virtrano*, Case No. 10222713; and (II) a complaint pending before the Equal Economic Opportunity Commission, styled as *Sean Martin v. I Afford NY*, case no. 520-2023-05795.

18. The Debtor's management includes (i) myself, as Chief Operating Officer, (ii) Moshe Guttman, as President and 50% membership interest holder, and (iii) Fishel Schlesinger, as Senior Vice President and 50% membership interest holder.

19. The Debtor estimates that its weekly payroll for all employees, exclusive of its members Moshe Guttman and Fishel Schlesinger, for the thirty (30) day period immediately following the Petition Date is $25,000.00.

20. The amount paid and proposed to be paid for services for the thirty (30) day period following the Petition Date to management members, Moshe Guttman and Fishel Schlesinger, is $1,250.00 and $750.00, respectively, per week.

21. The Debtor estimates that receipts for the thirty (30) day period immediately after the Petition Date is $150,000.00 and disbursements will be approximately $120,000.00 inclusive of payroll.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: November 3, 2023

_____
Eugene Goldstein